UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FRANK ORTIZ,<br><br>        Plaintiff,<br><br>v.<br><br>GREG COX, et al.,<br><br>        Defendants. | 3:07-CV-00001-PMP-RAM<br><br>ORDER |

Presently before the Court is Defendants' Motion for Leave to File in Camera and Under Seal (Doc. #194), filed on April 16, 2010.

Also before the Court is Plaintiff's Motion for Summary Judgment (Doc. #199), filed on April 19, 2010. Defendants filed an Opposition (Doc. #205) on May 11, 2010. Plaintiff filed a Reply (Doc. #213) on May 27, 2010.

Also before the Court is Defendants' Motion for Summary Judgment (Doc. #195), filed on April 16, 2010. Plaintiff filed an Opposition (Doc. #203) on May 6, 2010. Defendants filed a Reply (Doc. #211) on May 24, 2010.

Also before the Court is Plaintiff's Motion for Leave to File a Supplemental Brief to his Opposition (Doc. #209), filed on May 20, 2010. Defendants filed an Opposition (Doc. #212) on May 25, 2010. Plaintiff filed a Reply (Doc. #215) on June 7, 2010.

Also before the Court is Defendants' Motion to Strike Plaintiff's Opposition Exhibits 7, 8, 9, and 10 (Doc. #210), filed on May 24, 2010. Plaintiff filed an Opposition

1  (Doc. #220) on June 14, 2010.  Defendants filed a Reply (Doc. #222) on June 17, 2010.

2  Also before the Court is Plaintiff's Motion to Strike Exhibit L to Defendants'
3  Motion for Summary Judgment (Doc. #216), filed on June 9, 2010.  Defendants filed an
4  Opposition (Doc. #218) on June 14, 2010.  Plaintiff filed a Reply (Doc. #226) on June 24,
5  2010.

6  Also before the Court is Plaintiff's Motion to Extend Time to File an Opposition
7  to Defendants' Motion to Strike Plaintiff's Opposition Exhibits 7, 8, 9, and 10 (Doc. #217),
8  filed on June 9, 2010.  Defendants filed an Opposition (Doc. #219) on June 14, 2010.

9  **I. BACKGROUND**

10  Plaintiff Frank Ortiz ("Ortiz") is an inmate in the custody of the Nevada
11  Department of Corrections ("NDOC") currently housed at Ely State Prison ("ESP").  (Ans.
12  (Doc. #9) at ¶ 3.)  Defendants Greg Cox ("Cox"), Anthony Barber ("Barber"), Debra
13  Brooks ("Brooks"), Mark Cota ("Cota"), Adam Endel ("Endel"), Dale Haslem ("Haslem"),
14  Paul Hunt ("Hunt"), Lorena Irvin ("Irvin"), Debra Lightsey ("Lightsey"), Eldon McDaniel
15  ("McDaniel"), Glenn Perkins ("Perkins"), Thomas Prince ("Prince"), Michael Sandberg
16  ("Sandberg"), James Toycen ("Toycen"), Drugh Waggener ("Waggener"), David Williams
17  ("Williams"), and Anthony Zamora ("Zamora") are current or former employees of NDOC.
18  (Id. at 2.)  Defendant McDaniel is the Warden at ESP.  (Id. at ¶ 6.)  Defendants Endel and
19  Brooks are Associate Wardens at ESP.  (Id.)  Defendant Cox is the Deputy Director for
20  NDOC.  (Id. at ¶ 7.)

21  According to Ortiz's Presentence Investigation Report, on January 5, 1997, while
22  on duty and in uniform as a security officer in the area of Spanish hills, Ortiz stopped a
23  sixteen year old female and her boyfriend and told them they had to leave the area.  (Defs.'
24  Mot. Summ. J. ["Defs.' Mot."] (Doc. #195), Ex. H at 340.)  Ortiz reportedly told the female
25  he would give her a ride home.  (Id.)  Ortiz subsequently was charged with sexually
26  assaulting her.  (Id. at 341.)  On February 3, 1997, Ortiz entered an Alford plea to one count

of sexual assault pursuant to Nevada Revised Statute §§ 200.364; 200.366; 193.130; 176.113(4). (Id. at 339.) The court sentenced Ortiz to life with the possibility of parole in ten years. (Id.)

## A. Grievances and Notices of Charges

Between 2004 and 2006, Ortiz filed numerous grievances alleging staff at ESP harassed him, threatened him, retaliated against him, did not like him, mocked him, told him to "shut the fuck up," dragged his towel on the floor, talked about their (staff's) sexual organs, put blood on his legal mail, and "shook down" his cell for "fun." (Id., Ex. U at 515, 520, 522, 524, 525, 527-29, 531, 536, 537, 539, 541-42.) Specifically, on January 1, 2006, Ortiz filed a grievance alleging correctional officers damaged Ortiz's television and coaxial cable when they conducted a shake down of his cell. (Id., Ex. U at 526.) Thereafter, a small claims hearing was held regarding the damage to Plaintiff's television and coaxial cable. (Id., Ex. S at 491.) The state admitted fault and Ortiz received a one hundred and thirty-two dollar judgment. (Id.)

On June 8, 2006, Ortiz filed a grievance alleging Barber incited another inmate against Ortiz by calling Ortiz a "pedophile" in front of the inmate. (Id., Ex. U at 533; Ex. V at 546.) The allegation was forwarded to the Inspector General's ("IG") office to be investigated. (Id., Ex. U at 533-34; see also Defs.' Unredacted Docs. ["Defs.' Unredacted Docs."] (Doc. #196), Ex. W at 549-56.) The IG's office conducted an investigation and found the allegation to be without merit. (Id., Ex. U at 534; see also Defs' Unredacted Docs., Ex. X at 557-75.)

Between November 20, 2004 and November 20, 2006, named Defendants wrote up twelve notice of charges ("NOC") against Ortiz. (Defs' Unredacted Docs., Ex. O at 372, 377, 385, 388, 390, 392, 396, 398, 402, 406, 409, 413.) One NOC each was written by Defendants Cox, Haslem, Hunt, Lightsey, Perkins, Prince, Sandberg, Toycen, Waggener, and Zamora. (Id. at 372, 385, 388, 392, 396, 398, 402, 406, 409, 413.) Defendant Williams

3

wrote two NOCs.  (Id. at 377, 390.)  Between 2004 and 2006, Defendant Hunt was the preliminary hearing officer in seven of the hearings on the NOCs at issue and he determined the sanction in three of the hearings.  (Id. at 370-71, 372-77, 382-84, 392-95, 406-12.)  During the relevant time period, Ortiz was in disciplinary segregation because of his past charge for sexually assaulting his former cell mate.  (See id., Ex. R at 488; Defs.' Mot., Ex. T at 496;.)

On March 8, 2005, Defendant Lawrence observed Ortiz using an inmate-made passing device to transport inmate Kenneth Lewis's ("Lewis") socks to his own cell, and then attempting to send a cigarette in exchange.  (Defs.' Unredacted Docs., Ex. O at 370.)  Later on the same day, Lawrence observed Ortiz engaging in the same activity with the same inmate.  (Id.)  The next morning, Lewis informed Lawrence that he had given all his clothes to Ortiz because he was moving in with Ortiz and did not want Ortiz to beat him up.  (Id.)  Ortiz was charged with giving or receiving property in an unauthorized manner and for threatening Lewis.  (Defs.' Mot., Ex. T at 496; see also Ex. P at 432.)  Ortiz's charge of threatening Lewis was dismissed, but Ortiz was found guilty of receiving Lewis's clothing in an unauthorized manner.  (Id., Ex. P at 432.)  Thereafter, Ortiz avers Defendant Williams ordered another correctional officer to retrieve Lewis's clothing from Ortiz's cell and return it to Lewis.  (Id., Ex. T at 497.)  Ortiz subsequently filed a grievance regarding the charges against him which was denied.  (Id., Ex. T at 494-97.)

On April 26, 2005, Defendant Perkins found letters in Ortiz's writing but with a second inmate's return address and using the second inmate's postage.  (Defs.' Unredacted Docs., Ex. O at 372.)  Perkins subsequently filed charges against Ortiz but, according to Ortiz, Perkins did not file charges against the second inmate.  (Id., Ex. O at 372; Defs' Mot., Ex. G at 325.)  In response to Ortiz's grievance regarding this issue, NDOC stated Ortiz's history showed he had conducted similar actions in the past and upheld his charges.  (Defs.' Mot., Ex. G at 325.)

4

**B. Parole**

Ortiz became eligible for parole on January 3, 2007. (Defs.' Unredacted Docs., Ex. B at 20.) Pursuant to Nevada Revised Statute § 213.130(c), Ortiz's case worker, Defendant Irvin, prepared Ortiz's parole progress report. (Id. at 23.) In the report, Irvin characterized Ortiz's crime as sexually motivated. (Id.) The report also stated that Ortiz attempted to escape from prison. (Id. at 20.) Defendants admit that the escape profile is incorrect. (Defs.' Mot., Ex. Y.) According to Defendants, the statement regarding an escape attempt is the result of a typographical error based on an entry completed during Ortiz's initial classification upon entering the custody of NDOC. (Id.) Defendants aver Irvin did not have the access necessary to input information into the escape profile. (Id.) The report also stated that Ortiz had completed anger management and street readiness self improvement programs while incarcerated. (Defs.' Unredacted Docs., Ex. B at 21.) The report's medical and mental health information, completed by Patricia Orders, NDOC's therapist, stated Ortiz had a substance abuse history which included cocaine, marijuana, methamphetamine, and heroin. (Id. at 24-25.) The report also stated that Ortiz had been employed for less than a year before being arrested; however, according to Ortiz, he had been employed for five years prior to being arrested. (Id. at 20; Pl.'s Mot. Summ. J. ["Pl.'s Mot."] (Doc. #199), Ex. 13.)

As to Ortiz's disciplinary history, the report included sixteen pages of disciplinary charges. (Id., Ex. B at 26-41.) Between November 20, 2004 and November 20, 2006, Ortiz had seventeen separate disciplinary incidents consisting of a total of thirty-eight charges. (Defs.' Mot., Ex. P at 432-34.) Of those, seventeen charges ultimately were dismissed and Ortiz was found guilty of twenty-one charges. (Id.)

Ortiz refused to sign the report. (Defs.' Unredacted Docs., Ex. B at 23.) On July 31, 2006, Ortiz submitted an "Inmate Interview Request Long Form" ("kite") alleging that Irvin had not included all of his programming in his parole progress report. (Defs.' Mot.,

5

Ex. D at 57; see also Pl.'s Mot., Ex. 9.)  Defendant Endel responded that Ortiz could take his programming certificates with him to the parole hearing.  (Id., Ex. D at 57.)  On August 30, 2006, Ortiz filed a second kite alleging that he had completed a life skills program on August 23, 2006, and Irvin had not listed the program on the report.  (Id. at 58.)  Defendant Endel responded that because Irvin completed the report prior to Ortiz finishing the course, Ortiz could take the certificate with him to the parole hearing.  (Id.)

Ortiz's parole hearing was held on September 15, 2006 before a panel of the Board of Parole Commissioners ("the Board").  (Id., Ex. I at 346; Defs.' Unredacted Docs., Ex. R at 489.)  The panel consisted of Commissioner Chairman Bisbee, Commissioner Goodson, and Commissioner Veith.  (Defs.' Unredacted Docs., Ex. R at 489.)  At the hearing, Ortiz informed the Board that the report incorrectly listed Ortiz as an escapee.  (Defs.' Mot., Ex. L at ¶ 8.)  Ortiz also informed the Board that he had completed additional programming.  (Id., Ex. L at ¶ 8; Ex. I at 346.)  The Board voted to deny Ortiz parole.  (Id., Ex. M at 358.)  According to Commissioner Bisbee, the Board's decision was based on the offense of conviction and Ortiz's lengthy disciplinary history.  (Id., Ex. L.)

On October 2, 2006, Ortiz appealed the Board's decision to deny his parole. (Pl.'s Mot., Ex. 10.)  In his appeal, Ortiz claimed the Board had not considered his additional programming and had added a point on his Parole Worksheet for an erroneous misdemeanor charge.  (Id.)  On November 8, 2006, Commissioner Bisbee denied Ortiz's appeal.  (Id.)  Commissioner Bisbee acknowledged the additional programming but informed Ortiz that the corrections to his programming did not significantly impact his overall score.  (Id.)

### C.  Procedural History

On April 23, 2007, Ortiz filed an Amended Complaint alleging Defendants NDOC, Barber, Brooks, Cota, Cox, Curry, Endel, Haslem, Hunt, Irvin, Kirchner, Lawrence, Lightsey, McDaniel, Perkins, Prince, Sandberg, Toycen, Waggener, Williams, and Zamora

6

1 retaliated against Ortiz for filing too many grievances. (Pl.'s Am. Compl. (Doc. #9).)
2 Additionally, Ortiz alleges Defendants NDOC, Brooks, Curry, Kirchner, Lawrence,
3 McDaniel, Waggener, and Williams deprived Ortiz of his property without due process.
4 (Id.)[1] Finally, Ortiz alleges Defendants NDOC, Barber, Cota, Haslem, Sandberg, and
5 Williams incited other inmates against Ortiz in violation of his constitutional right to be free
6 from cruel and unusual punishment. (Id.) On May 12, 2009, Defendants Curry, Lawrence,
7 and Kirchner were terminated from the case. (Order of Dismissal (Doc. #115).)

8         The parties now cross-move for summary judgment. Ortiz contends Defendants
9 retaliated against him for filing too many grievances by writing false notices of charges
10 against Ortiz, imposing harsher punishments on Ortiz than on other inmates, stealing,
11 damaging, or discarding Ortiz's personal property, and submitting a parole report with false
12 data. Additionally, Ortiz contends Defendants deprived Ortiz of his property without due
13 process when they damaged his television and coaxial cable, and took his clothing without
14 Ortiz's authorization. Finally, Ortiz contends Defendants incited other inmates against him
15 in violation of his constitutional right to be free from cruel and unusual punishment by
16 calling Ortiz a "pedophile," "rat," "snitch," and "crybaby" in front of other inmates.

17         In response, Defendants contend they are entitled to qualified immunity because
18 Ortiz cannot establish any Defendant violated a clearly established constitutional right of
19 which a reasonable prison administrator would have known. Additionally, Defendants
20 argue the errors in Ortiz's parole report do not create an independent cause of action.
21 Defendants also contend Ortiz has failed to present sufficient evidence to support his
22 burden of showing Defendants' acts of filing disciplinary charges against Ortiz and

---

[1] In its screening Order, the Court dismissed Ortiz's second cause of action to the extent that it seeks relief under the federal due process clause. The Court expressed no opinion with regard to Ortiz's due process claim asserted under the Nevada Constitution. (See Order (Doc. #5).)

7

including false information in the parole report were done with the intention of retaliating against Ortiz for filing too many grievances. Defendants argue Ortiz's deprivation of property claim regarding his television and coaxial cable already has been adjudicated and is therefore subject to claim preclusion. Finally, Defendants argue Ortiz's Motion should be denied because he failed to comply with the requirements of Local Rule 56-1 by failing to include a concise statement of material facts in his Motion.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). If the moving party meets its burden, the burden shifts to the nonmoving party to "set forth specific facts that show a genuine issue for trial." Id. (internal quotation omitted). A moving party without the ultimate burden of persuasion at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). A district court is not required to comb the record looking for genuine issues of material fact that a party does not bring to the court's attention. Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028-31 (9th Cir. 2001). The Court views all evidence in the light most favorable to the non-moving party. Leisek, 278 F.3d at 898.

///

///

///

## III. DISCUSSION

### A. Motion for Leave to File In Camera and Under Seal

Defendants move to file the following exhibits under seal: a Parole Progress Report, a Presentencing Investigation Report, Notices of Charges, and Case Notes. (Defs.' Unredacted Docs., Exs. B, H, O, R.) Additionally, Defendants move to file the IG's Report and Investigative Documents regarding Ortiz's grievance against Barber in camera and under seal. (Id., Exs. W & X.) Defendants contend exhibits B, H, O, and R are documents that are kept in Ortiz's institutional file and Ortiz is not permitted to possess these documents in his cell pursuant to Administrative Regulations ("AR") 568 and 569. Defendants contend that allowing Ortiz to possess the documents in his cell could jeopardize Ortiz's safety and the safety of others. Additionally, Defendants argue exhibits W and X are confidential records of an investigation conducted by the Inspector General's office regarding Ortiz's allegation that Barber called Ortiz a pedophile in front of other inmates. Defendants contend they do not have the authority to release confidential exhibits W and X into the public record.

Pursuant to Nevada Revised Statute § 179A.150, each state agency "shall adopt regulations and make available necessary forms to permit inspection and review of information relating to other records of criminal history by those persons who are the subjects thereof." AR 568 allows an inmate to review his inmate file. (Defs.' Mot. for Leave to File In Camera and Under Seal (Doc. #194), Ex. A.) However, inmates are not permitted to access information which, if disclosed, might endanger the inmate or others, endanger the security of any Department facility, or would result in disclosure of personal or confidential information pertaining to someone other than the inmate. (Id.) Additionally, "[d]epartment records, files, and information pertaining to an individual inmate, which are not specifically approved for release in this regulation are confidential, are not public record, and are not to be communicated to the general public or the news

media." (Id., Ex. B (AR 569.02).)

The Court will grant Defendants' Motion to file exhibits B, H, O, and R under seal, and exhibits W and X in camera and under seal. AR 568 provides a method for Ortiz to review the documents in his institutional file as required by Nevada Revised Statute § 179.150. Additionally, the safety of Ortiz and others, and the concern for disclosure of confidential information are legitimate penological interests. Courts should accord deference to prison officials' assessments of their interests. Turner v. Safley, 482 U.S. 78, 85 (1987). The Court will therefore grant Defendants Motion to file B, H, O, and R under seal and exhibits W and X in camera and under seal.

### B. Cross-Motions for Summary Judgment

Qualified immunity "shields government officials from civil liability for actions taken in the course of their duties." Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009). Qualified immunity is available where "the official's conduct has not violated any 'clearly established' constitutional right 'of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "A law is 'clearly established' when 'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Camarillo v. McCarthy, 998 F.2d 638, 640 (9th Cir. 1993) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In an action under 42 U.S.C. § 1983, the plaintiff "bears the burden of proving that the right allegedly violated was clearly established at the time of the official's allegedly impermissible conduct." Id. at 639. "If plaintiff carries this burden, then the officers must prove that their conduct was reasonable even though it might have violated constitutional standards." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).

#### 1. Retaliation

As an initial matter, Ortiz does not address what specific actions Defendants Barber, Brooks, Cota, Haslem, Lightsey, Prince, Sandberg, Toycen, and Waggener took to

retaliate against Ortiz. It is Defendants who provide citations to the record regarding the NOCs written by each of the above-named Defendants. Ortiz fails to address in his Motion for summary Judgment or in his Opposition to Defendants' Motion for Summary Judgment how these NOCs were taken in retaliation for Ortiz's actions. The Court therefore will grant Defendants' Motion for Summary Judgment as to these individuals.

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). Accordingly, "because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." Id. Establishing a claim of First Amendment retaliation "entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) the prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Id. at 567-68. The prisoner need not demonstrate that his speech was "actually inhibited or suppressed," he need demonstrate only that it was chilled. Id. at 569.

In determining whether a proffered legitimate correctional goal is reasonably related to a regulation which infringes on a prisoner's constitutional right the Court should consider the following factors:

> First and foremost, "there must be a 'valid, rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it." If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in its favor. In addition, courts should consider three other factors: the existence of "alternative means of exercising the right" available to inmates; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the absence of ready alternatives" available to the prison for achieving the governmental objectives.

Brodheim v. Cry, 584 F.3d 1262, 1272 (9th Cir. 2009) (quoting Shaw v. Murphy, 532 U.S.

11

223, 228 (2001)).

a. Parole progress report

Ortiz argues Defendants Irvin, Endel, McDaniel, and Cox retaliated against Ortiz for filing too many grievances by including false information in his parole progress report.[2] Ortiz contends Irvin is responsible for preparing, Endel for approving, and McDaniel and Cox for failing to correct the errors in the report. Specifically Ortiz argues Irvin (1) improperly included her subjective opinion in the report when she described Ortiz's crime as sexually motivated, (2) failed to include Ortiz's additional programming certificates, (3) improperly listed methamphetamine in Ortiz's substance abuse history, (4) incorrectly stated that Ortiz had attempted to escape while in prison, and (5) improperly stated Ortiz previously had been convicted of a misdemeanor charge. Additionally, Ortiz contends Defendants did not consider Ortiz's additional programming until November 8, 2006, at which time Defendants acknowledged receipt of the additional certificates but failed to correct the errors in the parole likelihood factors worksheet.[3]

In response, Defendants contend that Irvin's comment that Ortiz's crime was sexually motivated was a proper objective characterization. Additionally, Defendants argue Ortiz was told to bring the additional programming certificates to the parole hearing, which Ortiz did. Defendants admit that the escape profile was inaccurate; however, Defendants

---

[2] It appears Ortiz also is arguing the alleged erroneous information in the Parole Progress Report is a violation of Nevada Revised Statute § 213.130 and its corresponding administrative regulations. To the extent Ortiz is alleging a separate cause of action under Nevada Revised Statute § 213.130, Ortiz has failed to plead such a claim in his Complaint. Even if the Court were to construe Ortiz's Amended Complaint liberally, the establishment of standards relating to parole or probation do not establish a basis for any cause of action against the state or its officers or employees. See Nev. Rev. Stat. § 213.10705. Therefore, Ortiz's argument fails as a matter of law.

[3] The parole likelihood factors worksheet is filled out by the Board and used to aid the Board in determining the parolee's eligibility. (Defs.' Mot., Ex. K.)

12

contend the escape profile only could have been generated during Ortiz's initial classification and Irvin did not have the access necessary such that she had control over what was generated in the escape profile. Finally, Defendants contend the alleged errors in the report were immaterial as the Board made its decision to deny Ortiz parole based on his lengthy disciplinary history and the nature of his offense.

Viewing the facts in the light most favorable to Ortiz, no question of material fact remains that Defendants Irvin, Endel, McDaniel, and Cox did not violate a clearly established constitutional right. With respect to Irvin, no reasonable juror could conclude that Irvin's characterization of Ortiz's sexual assault conviction as a sexually motivated offense is improper and thus constitutes an adverse action. Additionally, Ortiz has failed to raise an issue of fact establishing that Irvin was responsible for the errors in Ortiz's escape profile and his substance abuse history. Irvin did not have access to the program that generated the escape profile and Patricia Orders, NDOC's therapist, was responsible for the information on Ortiz's substance abuse history. Finally, even if Irvin was responsible for the errors, no question of material fact remains establishing that the errors constituted an adverse action as they were immaterial to the Board's decision to deny Ortiz parole.

Viewing the facts in the light most favorable to Ortiz, Ortiz has failed to raise an issue of material fact establishing that Defendants Endel, McDaniel, or Cox took an adverse action against Ortiz. When Ortiz filed a grievance regarding his programming, Endel's response was that Ortiz should bring the additional programming certificates with him to the parole hearing, which Ortiz did. No reasonable trier of fact would categorize Endel's response as an adverse action. Ortiz does not specify what actions Defendants McDaniel and Cox took with respect to Ortiz's parole progress report. Moreover, even if the Court were to find that Defendants Irvin, Endel, McDaniel, and Cox were responsible for the errors in the report and those errors constituted an adverse action, Ortiz has failed to raise an issue of material fact establishing that Defendants took such adverse actions because

13

Ortiz engaged in filing grievances, a protected activity. Accordingly, because Ortiz has failed to meet his burden of showing Defendants Irvin, Endel, McDaniel, and Cox violated a clearly established constitutional right, they are entitled to qualified immunity.

### b. False notice of charges and harsher punishments

Ortiz argues Defendants Williams, Perkins, Endel, Hunt, and Zamora retaliated against Ortiz by filing false notice of charges against Ortiz and imposing harsher punishments on Ortiz than they imposed on other inmates. Ortiz argues Perkins retaliated against Ortiz on April 26, 2005 when he wrote up charges against Ortiz for using another inmate's return address and postage but did not write up charges against the other inmate. Ortiz contends that in 2003, Hunt retaliated against Ortiz by giving him less food than the other inmates, and Zamora retaliated against Ortiz by scratching out a form Ortiz filled out and requiring Ortiz to fill out a new one. Ortiz does not address what specifically Endel did in retaliation. Finally, with respect to Williams, it appears Ortiz is arguing that Williams was involved in taking inmate Lewis's clothes from Ortiz and returning them to Lewis after former Defendant Lawrence wrote up a NOC against Ortiz for the incident.

In response, Defendants contend Williams and Perkins, as correctional officers, have discretion regarding whether to issue written NOCs. Moreover, Defendants argue the evidence shows Ortiz took advantage of Lewis when he manipulated Lewis out of all his clothes. Finally, with respect to Hunt and Zamora, Defendants contend their actions took place outside the statutory period and Ortiz is therefore time barred from including them in his action.

Ortiz's § 1983 claims are subject to a two year statute of limitations. Perez v. Seevers, 869 F.2d 425, 426 (9th Cir. 1989). Ortiz filed his § 1983 action in Nevada state court on November 27, 2006. Accordingly, Ortiz's allegations against Hunt and Zamora regarding actions Defendants took in 2003 are time barred. Additionally, Ortiz fails to explain specifically what false charges or harsh punishment Endel or Williams imposed

14

against Ortiz. Thus, the Court will grant Defendants' Motion and deny Ortiz's Motion for Summary Judgment as to Defendants Endel, Hunt, Zamora, and Williams.

With respect to the incident where Ortiz used another inmate's postage, Ortiz does not contend he was innocent, he merely argues that another inmate should have been charged as well. No reasonable trier of fact could conclude that it was not within Defendant Perkins' discretion as a correctional officer to decide to charge only Ortiz, especially considering Ortiz had engaged in the same unauthorized behavior in the past.

Moreover, even if the Court were to find no legitimate correctional goal justified Defendants' actions, Ortiz fails to raise an issue of material fact that any of the named Defendants wrote up NOCs or imposed harsher punishments on Ortiz than on other inmates because Ortiz engaged in filing numerous grievances. Accordingly, because Ortiz has failed to meet his burden of showing Defendants Williams, Perkins, and Endel violated a clearly established constitutional right, they are entitled to qualified immunity with respect to Ortiz's retaliation claim.

### 2. Deprivation of Property Without Due Process

This Court previously dismissed any federal due process claim Ortiz may have. Thus, Ortiz's only remaining due process claim arises under the Nevada Constitution, Article 1, § 8. Ortiz contends Defendants Brooks, Curry, McDaniel, NDOC, Waggener, and Williams deprived Ortiz of his property without due process of law. Specifically, Ortiz alleges that on January 8, 2006, Defendants damaged and subsequently discarded Ortiz's coaxial cable and television. Ortiz alleges that on March 9, 2005 and January 7, 2006 Defendants took Ortiz's clothing. With respect to the March 9, 2005 incident, Ortiz argues that he could not have stolen inmate Lewis's clothes because Ortiz was in a cell by himself and Lewis never was going to be Ortiz's cell mate. Ortiz avers NDOC prohibited Ortiz from having a cell mate because of his previous conviction for sexual assaulting his cell mate.

1  In response, Defendants contend the issue with Ortiz's coaxial cable and television already was decided in state court and therefore is subject to preclusion. With respect to the March 9, 2005 incident, Defendants contend Ortiz stole the clothing from inmate Lewis; thus, Defendants did not deprive Ortiz of his property, rather they returned Lewis' clothing back to him.

"No person shall be deprived of life, liberty, or property, without due process of law." Nev. Const. Art. 1 § 8. "[P]rocedural due process 'requires notice and an opportunity to be heard.'" Callie v. Bowling, 160 P.3d 878, 879 (Nev. 2007) (internal quotation omitted).

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). To determine whether claim preclusion applies, the Nevada Supreme Court has utilized a three factor test which requires that "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." Five Star Capital Corp. v. Ruby, 194 P.3d 709, 713 (Nev. 2008).

Ortiz's claim regarding the damaged coaxial cable and television is subject to claim preclusion. Ortiz brought the claim for damage to his coaxial cable and television in state small claims court against the State of Nevada and NDOC, the court entered a final judgment in favor of Ortiz, and Ortiz bases the present action for deprivation of property on the same claim.

With respect to the two remaining incidents, viewing the facts in the light most favorable to Ortiz, no question of material fact remains that Defendants did not deprive Ortiz of his property without due process. As to the March 9, 2005 incident, Ortiz was given the opportunity to file a grievance, which the NDOC staff reviewed. (Defs.' Mot.,

16

Ex. T at 498.) Moreover, Ortiz does not deny that the clothing was Lewis's property. With respect to the January 6, 2006 incident, Ortiz fails to address the specifics of the incident in his Motion for Summary Judgment or in his Opposition to Defendants' Motion for Summary Judgment, nor does Ortiz address how he was denied due process. The Court therefore will grant Defendants' Motion and deny Ortiz's Motion for Summary Judgment as to Ortiz's claim of deprivation of property without due process.

### 3. Cruel and Unusual Punishment

Ortiz contends Defendants NDOC, Barber, Cota, Haslem, Sandberg, and Williams incited other inmates against Ortiz in violation of Ortiz's constitutional right to be free from cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution and Article 1 of the Nevada Constitution. As an initial matter, Ortiz does not address what Defendants Cota, Haslem, and Williams specifically did to incite other inmates against him. Ortiz simply makes general assertions that correctional officers called him a "snitch," "cry baby," and that he rapes little boys and girls, without pointing to evidence in the record. The Court therefore will grant Defendants' Motion and deny Ortiz's Motion for Summary Judgment with respect to Defendants Cota, Haslem, and Williams.

Ortiz argues that on June 7, 2006, Barber incited other inmates against Ortiz by calling Ortiz a "pedophile" in front of other inmates. Additionally, Ortiz contends that on September 28, 2006, Sandberg called Ortiz a "rat" and a "child molester." In response, Defendants argue they took the grievance against Barber seriously and forwarded it to the IG's office to be investigated. Additionally, Defendants contend the Defendants Endel and Sandberg could not have had the requisite culpable state of mind because Ortiz had no contact with other inmates, and thus Ortiz's safety was not at risk.

To establish a violation of the Eighth Amendment, the inmate must show (1) he was deprived of something sufficiently serious to the reasonable person, and (2) the

17

deprivation occurred with a deliberate indifference to the inmate's health or safety.[4] Foster, 554 F.3d at 812. "It is 'cruel and unusual punishment to hold convicted criminals in unsafe conditions.'" Helling v. McKinney, 509 U.S. 25, 33 (1993) (internal quotation omitted). As such, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation omitted). Although prison conditions may be "restrictive and even harsh," being violently assaulted is not "part of the penalty that criminal offenders pay for their offenses against society." Id. at 833-34 (internal quotation omitted).

The deliberate indifference standard requires the prison official act with a subjectively culpable state of mind. Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir. 2002). Thus, a prison official cannot be liable under the Eighth Amendment unless "the official knows of and disregards an excessive risk to inmate health or safety." Id. at 1050. Additionally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.

Viewing the facts in the light most favorable to Ortiz, a reasonable trier of fact could not conclude that Defendants Barber and Sandberg acted with deliberate indifference to Ortiz's safety. During the relevant time period, Ortiz was in disciplinary segregation. Accordingly, even taking as true Ortiz's assertion that Defendants called Ortiz names in front of other inmates, Defendants lacked the requisite culpable state of mind that such comments would result in a substantial risk to Ortiz's own safety as Ortiz was not in contact

---

[4] Article 1 of the Nevada Constitution regarding cruel and unusual punishment follows the same standard as the Eighth Amendment to the federal Constitution. Cf. Naovarath v. State, 779 P.2d 944, 947, 949 n.6 (Nev. 1989) (noting Eighth Amendment to the Constitution and Article 1 of the Nevada State Constitution have the same standard for what constitutes cruel and unusual punishment in sentencing of a minor).

with other inmates. Moreover, as to Defendant NDOC, the comment Barber allegedly made was referred to the IG's office for investigation. Thus, even assuming there was a potential risk, viewing the facts in the light most favorable to Ortiz, no reasonable trier of fact could conclude that NDOC failed to respond reasonably to the risk. The Court therefore will grant Defendants' Motion and deny Ortiz's Motion for Summary Judgment as to Ortiz's claim for cruel and unusual punishment.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion for Leave to File in Camera and Under Seal (Doc. #194) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (Doc. #199) is hereby DENIED on all counts.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. #195) is hereby GRANTED on all counts.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File a Supplemental Brief to his Opposition (Doc. #209) is hereby DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Plaintiff's Opposition Exhibits 7, 8, 9, and 10 (Doc. #210) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Exhibit L to Defendants' Motion for Summary Judgment (Doc. #216) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Extend Time to File an Opposition to Defendants' Motion to Strike Plaintiff's Opposition Exhibits 7, 8, 9, and 10 (Doc. #217) is hereby GRANTED.

///
///
///
///

1  IT IS FURTHER ORDERED that judgment is hereby entered in favor of
2  Defendants and against Plaintiff.

DATED: July 29, 2010.

_____
PHILIP M. PRO
United States District Judge